**In re James Keith HAMMOND, Debtor.**

**Bankruptcy No. 2-91-00504.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 23, 1991.

As Amended Aug. 28, 1991.

Elizabeth Doucet, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

Pamela N. Maggied, Columbus, Ohio, for debtor.

R. Scott Warner, Warner & Hultin, Nora E. Jones, Schottenstein, Zox & Dunn, Columbus, Ohio, for Bank One, Columbus, N.A.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Introduction*

This matter is before the Court upon the motion filed by James Keith Hammond, the debtor, requesting the Court to quash the motion of Bank One, Columbus, N.A. ("Bank One"), which seeks to examine him pursuant to Federal Rule of Bankruptcy Procedure 2004. Bank One has opposed the motion. Following a hearing held on June 3, 1991, this matter was taken under advisement.

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(2)(A) and (O).

### II. *Findings of Fact*

1. On January 23, 1991, the debtor voluntarily filed a petition for relief under Chapter 7 of the Bankruptcy Code. The schedules accompanying the debtor's petition disclose debts to Bank One totaling $1,945.29, incurred by the debtor's use of one credit card in December, 1989, and another in May, 1990 (hereinafter referred to collectively as the "Credit Card Debt").

2. On February 22, 1991, the debtor attended a meeting of his creditors and was examined under oath by the Chapter 7 trustee and at least two creditors, one of whom was Bank One.

3. On February 27, 1991, Bank One's counsel mailed a letter to debtor's counsel, stating "that your client may have intentionally incurred credit card indebtedness beyond his ability to repay that indebtedness." Bank One expressed therein its desire to conduct an examination of the debtor pursuant to Rule 2004 with respect to his income and expenses during 1989 and 1990. The letter also stated that Bank One would be willing to resolve its possible claim of nondischargeability if the debtor agreed to reaffirm his debt to Bank One in the amount of $500. Enclosed with the letter was a proposed reaffirmation agreement to this effect.

4. Counsel for the debtor did not respond to Bank One's letter. On March 6, 1991, Bank One filed a motion requesting an examination of, and production of documents by, the debtor pursuant to Rule 2004. A proposed order granting the request was tendered with the motion.

5. On March 13, 1991, the Court entered the proposed order ("Order"), *ex parte*, thereby granting Bank One's request. In addition to requiring the debtor to appear and submit to an examination, the Order required the debtor to produce the following items:

All documents and things describing, evidencing, relating to, or in any way relevant to the following:

(1) Source, nature and amount of all gross income (earned and unearned) of Debtor(s) from January, 1988 through December, 1990;

(2) Nature and amount of all expenses of and disbursements by Debtor(s) and Debtor(s)' household and business ventures from January, 1988 through December, 1990;

(3) Paycheck stubs from January, 1988 through December, 1990;

(4) 1988, 1989 and 1990 Federal, state, and local income tax returns including W–2s, schedules, and other attachments;

(5) All checkbook registers, cancelled checks, monthly (or other) statements, passbooks, and certificates of deposit covering the period January, 1988 through December, 1990;

(6) Itemizations and any documents related to use of cash advances obtained on Debtor(s)' Bank One credit card(s).

6. The debtor, on March 13, 1991, moved to vacate the Order, contending that "this time consuming task appears to be unnecessary, burdensome and abusive, and harassing considering the amount at issue." Motion, p. 4. The debtor's motion asserts further that "Bank One's Motion

was filed in bad faith; debtor believes that Bank One is unfairly attempting to elicit a reaffirmation agreement because counsel fees and debtor's time consumed in putting the records together and attending a Rule 2004 examination could cost more than the $500.00 proposed compromise reaffirmation amount." Debtor's counsel suggests that Bank One's counsel has convinced numerous credit card issuers to proceed with this tactic as a means of obtaining reaffirmation agreements. *Id.* Bank One opposes the debtor's motion.

### III. *Conclusions of Law*

#### A. Scope of Examination

The issue before the Court is whether Bank One's request is proper under Rule 2004. The scope of an examination under Rule 2004 is delineated in the rule itself:

(b) The examination of an entity under this rule or of the debtor under section 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge....

It is well-established that an examination conducted pursuant to Rule 2004 is extremely broad. *Chereton v. United States,* 286 F.2d 409, 413 (6th Cir.), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961); *Intercontinental Enterprises, Inc. v. Keller (In re Blinder, Robinson & Co.),* 127 B.R. 267, 273 (D.Colo.1991); *In re Valley Forge Plaza Assoc.,* 109 B.R. 669, 674 (Bankr.E.D.Pa.1990); *In re Texaco, Inc.,* 79 B.R. 551, 553 (Bankr.S.D.N.Y.1987); *Matter of Wilcher,* 56 B.R. 428, 433 (Bankr. N.D.Ill.1985); *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wisc.1984); *In re GHR Energy Corp.,* 35 B.R. 534, 537 (Bankr. D.Mass.1983). "[A]n examination under the Bankruptcy Rule [2004] is in the nature of [an] inquisition and, consequently, the field of inquiry is wide...." *Stonitsch v. St. Louis Banana and Tomato Co. (In re Isis Food, Inc.),* 33 B.R. 45, 11 B.C.D. 497 (Bankr.W.D.Mo.1983) (*quoting In re Larkham,* 24 B.R. 70–72 (Bankr.D.Vt.1982)).

 The primary purpose of an examination under Rule 2004 is to permit the trustee to ascertain the extent and location of the estate's assets; such examination is not limited to the debtor or his agents, but may extend to creditors and third parties who have dealt with the debtor. *See Chereton v. United States,* 286 F.2d at 413. Although the rule does not define who may conduct an examination, case law suggests that any party-in-interest may do so. *In re GHR Energy Corp.,* 35 B.R. at 536. The criterion for status as a party-in-interest is whether the moving party has an interest in the continued administration of the estate. *See In the Matter of Wilcher,* 56 B.R. at 432.

 While the scope of Rule 2004 is extremely broad, it is not without limits. *In re Blinder, Robinson & Co.,* 127 B.R. at 276 (D.Colo.1991); *In re Financial Corp.,* 119 B.R. 728, 733 (Bankr.C.D.Cal.1990); *In re Fearn,* 96 B.R. 135 (Bankr.S.D.Ohio 1989). The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. *In the Matter of Wilcher,* 56 B.R. at 433; *In re Johns Manville Corp.,* 42 B.R. 362, 364 (S.D.N.Y.1984). Likewise, an examination cannot be used for purposes of abuse or harassment. *In re Mittco, Inc.,* 44 B.R. at 36.

#### B. Burden of Proof

 A party contesting the propriety of an examination pursuant to Rule 2004 must file a motion requesting that the order allowing the examination be vacated and any subpoena quashed. Once such a motion is filed, the party seeking to conduct the examination must produce probative evidence demonstrating that "good cause" exists for the taking of the requested discovery. *Freeman v. Seligson,* 405 F.2d 1326, 1336 (D.C.Cir.1968); *In the Matter of Wilcher,* 56 B.R. at 434. This is so, even though the ultimate burden of persuasion is placed upon the movant. *In the Matter of Wilcher,* 56 B.R. at 434.

 Good cause ordinarily may be shown if the examination and requested documents are necessary to establish the claim of the party seeking the examination

or document production, or that denial of such request would cause it undue hardship or injustice. *Boeing Airplane v. Coggeshall*, 280 F.2d 654, 670 (D.C.Cir. 1960). Greater latitude should be granted to the party seeking the examination if the debtor was engaged in questionable conduct. *In re Vantage Petroleum Corp.*, 34 B.R. 650, 11 B.C.D. 1331 (Bankr. E.D.N.Y.1983); *In re Foerst*, 93 F. 190, 191 (S.D.N.Y.1899). If the requesting party comes forward with sufficient evidence of good cause, the burden shifts to the party opposing the examination.

### C. The Balancing Test

▇ Rule 2004 requires the Court to balance the competing interests of the parties, weighing the relevance and necessity of the information sought by the examination. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y.1991). This requires a balancing of the creditor's right to obtain information relating to the debtor's financial condition against " 'the incalculably precious right of the citizen to be let alone....' " *In re Vantage Petroleum Corp.*, 34 B.R. 650, 11 B.C.D. at 1331 (*quoting Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir.1959)). Documents which meet the requirement of relevance do not, standing alone, demonstrate that there is good cause for requiring their production; necessity is vital to establishing good cause. *Id.; In re Public Service Co. of N.H.*, 91 B.R. 198 (Bankr. D.N.H.1988).

### D. Application of the Law

▇ The Court is cognizant of the wide breadth of Rule 2004; however, the inquiry permitted by the rule cannot be authorized if its primary purpose is to force debtors into reaffirming debts because submission to an examination, with its attendant costs, would be burdensome and expensive. Here, debtor's counsel was approached by counsel for Bank One immediately following the meeting of creditors. The offer was clear: reaffirm on a portion of the debt owed to the bank or suffer the consequences of an examination under Rule 2004. This fact, coupled with the request for the production of numerous irrelevant documents, leads the Court to conclude that Bank One did not possess a *bona fide* reason for requesting an examination nor did it believe that it might have a legitimate cause of action against the debtor when it offered to settle any potential nondischargeability claim through a reaffirmation agreement. In fact, there is no evidence that Bank One ever determined that facts might exist which would give rise to a claim of nondischargeability. On the contrary, Bank One's request was aimed at forcing the debtor to sign a reaffirmation agreement or incur attorney's fees for representation in connection with the examination, and possibly additional fees and liability if a nondischargeability action were filed.

The Court is not unmindful of the decision rendered in *First Chicago FCC Nat'l Bank v. Willett (In re Willett)*, 125 B.R. 607 (Bankr.S.D.Cal.1991), in which counsel for the creditor was sanctioned for failure to seek an examination under Rule 2004 to determine whether the filing of a plaintiff's complaint was justified. Nor is the Court unaware that every attorney is bound by the strict standards set forth in Rule 11 of the Federal Rules of Civil Procedure, as adopted by Federal Rule of Bankruptcy Procedure 9011. Notwithstanding, Rule 2004 does have limits, one of which is that it cannot be used for purposes of abuse or harassment. *In re Mittco, Inc*, 44 B.R. at 36. Here, the evidence demonstrates that Bank One's primary, if not sole, objective in requesting the examination was to coerce the debtor into reaffirming a portion of the Credit Card Debt. Such a tactic is an abuse of the judicial process.

This is not to suggest that the Court discourages the use of such examinations. Clearly, Rule 2004 is available to parties who invoke it in good faith and for a legitimate purpose. The Court will not, however, put its imprimatur on tactics designed to "shake loose" modest sums of money simply because the costs and risks of opposing or attending an examination under Rule 2004 would equal or exceed the reaffirmed debt.

It should be noted, parenthetically, that Bank One relies on the proposition that presentation of a credit card and signing of

a receipt constitute a representation of intent to repay, and if the cardholder had no intention (or, presumably, ability) at the time of purchase of paying for the goods, such behavior is fraudulent. *See, e.g., Manufacturer's Hanover Trust Co. v. Pannell (In re Pannell)*, 27 B.R. 298, 302 (Bankr.E.D.N.Y.1983). Bank One allegedly desires the examination to review circumstantial evidence of such fraudulent intent in the debtor's use of the credit cards on two occasions. However, the Court is not persuaded that the cases cited by Bank One contemplate Rule 2004 examinations simply because a credit card has been used by a debtor and the debt not paid. Nor is the Court convinced that, in this circuit, a debtor's inability to pay a credit card charge, when it was incurred, gives rise to a claim of fraud. *See generally Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082 (6th Cir.1988).

■■■ This Court will not routinely grant requests for examination involving the nonpayment of credit card indebtedness unless the movant is able to demonstrate a nexus between the use of the credit card and alleged fraudulent conduct by the debtor. Stated differently, the creditor must show more than the mere use of a credit card and nonpayment; there must be some strong suggestion or evidence of fraud by the debtor. Otherwise, it is unlikely that the creditor will be permitted to put the debtor to the time and expense of an examination or retrieval of documents. The fact that a debtor might not have been able to pay the debt at the time it was incurred—a fact that may exist with a substantial percentage of consumer credit card users—is insufficient to invoke the processes of Rule 2004.

■■■ Finally, pursuant to Local Bankruptcy Rule 5.4(b), the Court shall give debtors and other potential examinees twenty (20) days to file written objections to motions requesting examinations under Rule 2004, except in those instances where the case trustee is seeking to examine the debtor or third parties. Thus, the Court will continue to grant requested examinations by case trustees on an *ex parte* basis, as is the practice nationally; non-trustees requesting an examination or production of documents, however, will be subject to a twenty-day notice period. In such cases, a hearing will be scheduled only if requested and the Court deems it necessary to take evidence or desirable to hear oral argument.

■■■ In short, third parties intending to pursue exceptions to the discharge of certain claims or objections to the issuance of a discharge may examine the debtor(s) at the meeting of creditors. Except in extraordinary circumstances, any discovery beyond that meeting should occur as part of the adversary proceeding process provided by Rules 7026–7037 upon the filing of a complaint. Prior to the actual filing of a complaint, the creditor, by virtue of the meeting of creditors and its own records, should have sufficient information to determine whether grounds exist for filing a complaint. To proceed in any other manner provides an opportunity for the type of abuse evidenced in this instance.

Based upon the foregoing, the debtor's request to quash the examination under Rule 2004 shall be, and the same hereby is, GRANTED.

IT IS SO ORDERED.